van Gestel, Allan, J.
This matter is before the Court on a motion by the defendants for summary judgment and a cross motion by the plaintiffs for partial summary judgment. There are two counts in the complaint: Count I, for breach of contract; and Count II, for violation of a section of the Uniform Commercial Code (the “U.C.C”).
BACKGROUND
The plaintiffs are Richard and Maureen Balsbaugh (“Richard” and “Maureen” or collectively the “Balsbaughs”).
In October 1998, Richard opened a Fidelity Ultra Service Account (the “Fidelity Account”) with the defendant Fidelity Brokerage Services, LLC (“Fidelity”). Fidelity allowed its customers to have check writing privileges from a separate demand deposit account at a bank by which customers could write checks against funds in their Fidelity Account. In the situation with Richard’s Fidelity Account, the checks were drawn on the defendant United Missouri Bank (“United Bank”).
In October 2002, the Balsbaughs undertook a major landscaping project at their home in Brookline. A contract was entered into with New Land Design, Ltd. (“New Land”) by which New Land would serve as the general contractor for the project.
Apparently, problems arose in relations between New Land and its various subcontractors and suppliers over payment for work performed and materials supplied. As a result, a short time prior to April 2001, Richard began issuing checks (the “joint checks”) drawn on the United Bank account made payable jointly to New Land and particular subcontractors or vendors on the project. Between April and June of *341 2001, Richard wrote 23 such joint checks. New Land received the checks, endorsed them, and they were deposited in New Land’s account at Citizens Bank in Massachusetts. None of these checks was endorsed by the subcontractors or vendors jointly designated thereon.
As a result of a dispute over completion of certain aspects of the landscaping project, suit was brought by the Balsbaughs against New Land to recover, among other things, for money that had been paid on the joint checks that lacked the endorsements of the designated subcontractors and vendors.
New Land, and its principal, each filed for bankruptcy protection, and the Balsbaughs’ suit was stayed. Richard, however, filed a Notice of Claim for $140,000 in the bankruptcy proceedings. This Claim was compromised by a settlement negotiated between the parties and approved by the Bankruptcy Court. Richard is currently receiving monthly payments from the Bankruptcy Trustee for this Claim.
None of the subcontractors or vendors had any contractual relationship with the Balsbaughs, although they did have statutory mechanic Hen rights pursuant to G.L.c. 254. None of the subcontractors or vendors, however, took any of the necessary statutory steps to perfect any Hen rights they may have had, and the time to do so has now expired. Further, none has brought proceedings against the Balsbaughs.
It is in this context that the Balsbaughs have brought suit against Fidelity and United Bank for breach of contract and violation of G.L.c. 106, sec. 4-401 of the Massachusetts version of the U.C.C.

DISCUSSION

“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972). Mass.R.Civ.P. Rule 56(c). Here, of course, both sides have moved for summary judgment, and both argue that there are no material facts in dispute that would prevent granting such judgment.
There is nothing in the agreement establishing Richard’s Fidelity Account that requires Fidelity to take any action with regard to the checks in issue other than to make the check-writing process available through a bank such as United Bank. G.L.c. 106, sec. 4-105 defines a “bank” as “a person engaged in the business of banking, including a savings bank, savings and loan association, credit union, or trust company.” Fidelity itself is not a bank. Consequently, Fidelity cannot be found liable for a breach of contract with Richard over the handling by United Bank of the joint checks written in connection with his Fidelity Account, or under G.L.c. 106, sec. 4-401 which relates to “a bank.”
Summaiy judgment is warranted in favor of Fidelity-
The real focus of this case is the obligation of United Bank to Richard in connection with its handling of the joint checks in issue.
This Court begins with an observation not addressed by any of the parties in their motions. G.L.c. 106, sec. 4-102(b) provides:
The liability of a bank for action or nonaction with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place where the bank is located. In the case of action or nonaction by or at a branch or separate office of a bank, its liability is governed by the law of the place where the branch or separate office is located.
The amended complaint alleges that United Bank “is a Missouri Bank with a principal place of business in Missouri.” The defendants’ answer quibbles a bit denying the plaintiffs’ allegation, responding that United Bank “is a national banking association organized and existing under the laws of the United States with a principal place of business in Kansas City, Missouri.” Either way, United Bank does not appear to be located in Massachusetts, nor is it alleged to have a branch or separate office located in the Commonwealth. Presumably, therefore, Missouri law should apply to United Bank. But neither party makes any argument to this Court that it must apply Missouri law in this case. Consequently, this Court will assume that the Uniform Commercial Code exists in Missouri and presume that its provisions, and the Missouri law interpreting it, are not significantly different from the U.C.C. law of Massachusetts.
The underlying purposes and policies of the U.C.C. are, among others, “to simplify, clarify and modernize the law governing commercial transactions.” G.L.c. 106, sec. l-102(2)(a). The U.C.C. “shall be liberally construed and applied to promote its underlying purposes and policies.” G.L.c. 106, sec. 1-102(1).
A bank and its depositor are in the contractual relation of debtor and creditor. Carpenter v. Suffolk Franklin Sav. Bank, 362 Mass. 770, 776 (1973); Govoni & Sons Const Co., Inc. v. Mechanics Bank, 51 Mass.App.Ct. 35, 39 (2001). The funds on general deposit with a bank are the property of the bank, not of the depositor. Town Bank & Trust Co. v. Silverman, 3 Mass.App.Ct. 28, 31 (1975).
The allegations of the Balsbaugh’s complaint are properly characterized as setting out a claim of wrongful debit because the joint checks were not properly payable only to New Land under G.L.c. 106, §4-401(1), inserted by St. 1957, c. 765, §1.
This is a common-law claim that was retained under the Uniform Commercial Code. See Stone & Webster Engr. Corp. v. First Natl. Bank & Trust Co., *342 345 Mass. 1, 9-11 (1962); Siegel v. New England Merchs. Natl. Bank, 386 Mass. 672, 675 (1982).
As the phrase “properly payable” was left effectively undefined by the original code, it is appropriate to ascertain its meaning by reference to the common law. See White & Summers, Uniform Commercial Code §18-3, at 878 (3d ed. 1988). While the parties have not cited, and we have not found, a Massachusetts case in which a bank has made payment to an unauthorized bearer on an unendorsed check made payable to the bank itself, there appears to be a general (and perhaps universal) rule in other jurisdictions:
“Where a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer; it takes the risk in treating such a check as payable to bearer and is placed on inquiry as to the authority of the drawer’s agent to receive payment.” Bank of S. Md. v. Robertson’s Crab House, 39 Md.App. 707, 715, 389 A.2d 388 (Ct.Spec.App. 1978), quoting from 9 C.J.S. Banks & Banking §340, at 683 (1938). See Dalton & Marberry, P.C. v. NationsBank, N.A., 982 S.W.2d 231, 234 & n.2 (Mo. 1998), and cases cited. This rule is consistent with the code, and we have found no jurisdiction rejecting it. The results reached in somewhat comparable Massachusetts cases convince us that the rule expresses the law of the Commonwealth.
Based on this rule, the [joint] checks were not properly payable from the [Balsbaugh] account! ] absent inquiry by the bank into [New Land]’s authority to receive the proceeds. See Master Chem. Corp. v. Inkrott, 55 Ohio St.3d 23, 24, 563 N.E.2d 26 (1990); id. at 29-30 (Holmes, J., concurring). Compare First Nat’l Bank of Boston v. Hovey, 10 Mass.App.Ct. 715, 721 (1980) (check paid over unauthorized signature not properly payable).
Govoni, supra, 51 Mass.App.Ct at 39-42.
Massachusetts case law makes clear that a drawer (Richard) may insist that the drawee (United Bank) re-credit his account with the amount of any unauthorized payment. Stone & Webster Engr. Corp. v. First Nat’l Bank & Trust Co., 345 Mass. 1, 9-11 (1962). “There is widespread authority that ‘payment of checks with missing endorsements’ involves ‘clearly unreasonable conduct on the part of the bank.’ ” White & Summers, Uniform Commercial Code, sec. 15-3, at 761.
United Bank responds with an argument that the Balsbaughs must prove that they have suffered damages as a result of United Bank’s conduct. In part, the Balsbaughs concede that they suffered no losses as a result of action by the subcontractors or vendors who were co-drawees on the joint checks. In their memorandum of law in support of their cross-motion for partial summary judgment, they say:
Defendants are correct in asserting that Plaintiffs have not been sued by New Land’s subcontractors and/or suppliers. New Land’s subcontractors and suppliers contracted directly with New Land and lacked privity of contract to bring suit against Plaintiffs for breach of contract. New Land’s subcontractors!’] and suppliers!’] only recourse would have been to file a mechanic’s lien. No mechanic’s liens were filed.
Memorandum of Law in Support of Plaintiffs’ Opposition to Defendants’ Motion for Summary Judgment and Cross-Motion for Partial Summary Judgment at P-7-
United Bank relies on G.L.c. 106, sec. 4-103(e), which provides that:
The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care. If there is also bad faith it includes any other damages the party suffered as a proximate consequence.
This section of the U.C.C. could have been written with greater clarity. In discerning its meaning, the Court observes that it appears at the very beginning of Article 4, coming even before the two lengthy definitions sections. Thus, it should be read as applying generally to the entire Article and not be limited solely to negligence-based claims as the Balsbaughs argue.
While no Massachusetts cases are cited by the parties, or have been found by this Court, decisions from other jurisdictions have held that a bank customer may not recover from his bank’s improper payment of a draft unless the customer proves that the bank’s action caused him a loss. See, e.g., Isaac v. American Heritage Bank and Trust Co., 675 P.2d 742, 744, 747 (Colo. 1984); Cooper v. Stockyards Bank of Oklahoma City, 644 P.2d 123, 125 (Okla.Civ.App. 1981); Ed Stinn Chevrolet, Inc. v. National City Bank, 28 Ohio St.3d 221, 234 (1986). These decisions seem consistent with the mandate that the U.C.C. “shall be liberally construed and applied to promote its underlying purposes and policies.” G.L.c. 106, sec. 1-102(1). To compel a recrediting of an account when no loss has been sustained by a depositor is hardly a modernization of the law governing commercial transactions, G.L.c. 106, sec. l-102(2)(a), and runs counter to the general law of damages that compensates parties for losses actually sustained.
Again, in their Memorandum of Opposition, the Balsbaughs have stated in a general way what they may claim as damages. At pp. 7-8 they claim:
Plaintiffs’ damages include improper installation of rear yard causing extensive flooding, improper installation of electrical work, improper installation of water fountain, improper installation of motorized front gate, improper installation of and defective fencing, installation of damaged or defective *343 trees and plants, and cracked foundation of the adjoining carriage house. Friel provided an estimate to complete, correct and repair the work performed by New Land’s subcontractors and suppliers. Plaintiffs have incurred damages as a result of the improper negotiation of the joint checks including: $5,600.00 in consulting fees to Friel; $15,000.00 estimate to repair motorized front gate; $66,000.00 in landscaping work to correct and repair plantings; $2,500.00 to repair crack in foundation to carriage house; $4,000.00 in repairs to interior of carriage house; $5,300.00 to correct and repair fencing; and $5,800 to correct and repair outdoor lighting.
None of the items listed by the Balsbaughs above appear, on their face at least, to constitute damages caused by United Bank’s handling of the joint checks. These are damages caused by others for whom United Bank is not in any way responsible. Such damages as may properly be related, however, are, in part at least, factual in nature.
Thus, while this Court is unable to say on the present record that the Balsbaughs have suffered no damages as a result of United Bank’s actions in honoring the joint checks without full endorsements, it can say that no amount should be re-credited to Richard’s account in the absence of the evidence of related damages having been sustained.

ORDER

For the foregoing reasons the Defendants’ Motion for Summary Judgment, (Paper #18), is ALLOWED as to the defendant Fidelity Brokerage Services, LLC and DENIED as to the defendant United Missouri Bank; and the plaintiffs’ Cross Motion for Partial Summary Judgment, (Paper #23), is DENIED.