van Gestel, Allan, J.
This matter is before the Court on two motions in limine by the remaining defendant, United Missouri Bank (“United Bank”). The first motion relates to the plaintiffs’ damages resulting from United Bank’s actions, Paper #30, and the second motion relates to the possibility of ambiguity in certain checks in issue, Paper #31.

BACKGROUND

The following facts were determined in this Court’s decision on motions for summary judgment rendered on September 7, 2004. See Mass.R.Civ.P. Rule 56(d).
The plaintiffs are Richard and Maureen Balsbaugh (“Richard” and “Maureen” or, collectively, the “Balsbaughs”).
In October 1998, Richard opened a Fidelity Ultra Service Account (the “Fidelity Account”), with the defendant Fidelity Brokerage Services, LLC (“Fidelity”). Fidelity allowed its customers to have check writing privileges from a separate demand deposit account at a bank by which customers could write checks against funds in their Fidelity Account. In the situation with Richard’s Fidelity Account, the checks were drawn on the defendant United Bank.
In October 2002, the Balsbaughs undertook a major landscaping project at their home in Brookline. A contract was entered into with New Land Design, Ltd. (“New Land”) by which New Land would serve as the general contractor for the project.
Apparently, problems arose in relations between New Land and its various subcontractors and suppliers over payment for work performed and materials supplied. As a result, a short time prior to April 2001, Richard began issuing checks (the “joint checks”) drawn on the United Bank account made payable jointly to New Land and particular subcontractors or vendors on the project. Between April and June of 2001, Richard wrote 23 such joint checks. New Land received the checks, endorsed them, and they were deposited in New Land’s account at Citizens Bank in Massachusetts. None of these checks was endorsed by the subcontractors or vendors jointly designated thereon.
As a result of a dispute over completion of certain aspects of the landscaping project, suit was brought by the Balsbaughs against New Land to recover, among other things, for money that had been paid on the joint checks that lacked the endorsements of the designated subcontractors and vendors.
New Land, and its principal, each filed for bankruptcy protection, and the Balsbaughs’ suit was stayed. Richard, however, filed a Notice of Claim for $140,000 in the bankruptcy proceedings. This Claim was compromised by a settlement negotiated between the parties and approved by the Bankruptcy Court. Richard is currently receiving monthly payments from the Bankruptcy Trustee for this Claim.
None of the subcontractors or vendors had any contractual relationship with the Balsbaughs, although they did have statutory mechanic lien rights pursuant to G.L.c. 254. None of the subcontractors or vendors, however, took any of the necessary statutory steps to perfect any lien rights they may have had, and the time to do so now has expired. Further, none has brought any proceedings against the Balsbaughs.
It is in this context that the Balsbaughs brought suit against Fidelity and United Bank for breach of contract and violation of G.L.c. 106, Sec. 4-401 of the Massachusetts version of the U.C.C. And it was in this context that on September 7, 2004, this Court granted summary judgment in favor of Fidelity, leaving United Bank as the sole defendant.

DISCUSSION

Fidelity made the check-writing process available through United Bank. The Balsbaugh’s remaining claims are over the handling by United Bank of the joint checks written in connection with his Fidelity Account.
G.L.c. 106, Sec. 4-102(b) provides:
The liability of a bank for action or nonaction with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place where the bank is located. In the case of action or nonaction by or at a branch or separate office of a bank, its liability is governed by the law of the place where the branch or separate office is located.
United Bank is a national banking association organized and existing under the laws of the United States with a principal place of business in Kansas *50 City, Missouri. United Bank is not located in Massachusetts, nor is it alleged to have a branch or separate office located in the Commonwealth. Missouri law should apply to United Bank. But neither party has yet made any argument to this Court that it must apply Missouri law in this case. Consequently, as it did on the summary judgment motion, this Court will presume that the Uniform Commercial Code exists in Missouri and presume that its provisions, and the Missouri law interpreting it, are not significantly different from the U.C.C. law of Massachusetts.
The underlying purposes and policies of the U.C.C. are, among others, “to simplify, clarify and modernize the law governing commercial transactions.” G.L.c. 106, Sec. l-102(2)(a). The U.C.C. “shall be liberally construed and applied to promote its underlying purposes and policies.” G.L.c. 106, Sec. 1-102(1).
A bank and its depositor are in the contractual relation of debtor and creditor. Carpenter v. Suffolk Franklin Sav. Bank, 362 Mass. 770, 776 (1973); Govoni & Sons Const. Co., Inc. v. Mechanics Bank, 51 Mass.App.Ct. 35, 39 (2001). The funds on general deposit with a bank are the property of the bank, not of the depositor. Town Bank & Trust Co. v. Silverman, 3 Mass.App.Ct. 28, 31 (1975).
The allegations of the Balsbaughs’ complaint are properly characterized as setting out a claim of wrongful debit. The joint checks allegedly were not properly payable only to New Land. See G.L.c. 106, §4-401(1).
“Where a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer; it takes the risk in treating such a check as payable to bearer and is placed on inquiry as to the authority of the drawer’s agent to receive payment.” Bank of S. Md. v. Robertson’s Crab House, 39 Md.App. 707, 715, 389 A.2d 388 (Ct.Spec.App. 1978), quoting from 9 C.J.S. Banks & Banking §340, at 683 (1938). See Dalton & Marberry, P.C. v. NationsBank, N.A., 982 S.W.2d 231, 234 & n.2 (Mo. 1998), and cases cited. This rule is consistent with the code, and we have found no jurisdiction rejecting it. The results reached in somewhat comparable Massachusetts cases convince us that the rule expresses the law of the Commonwealth.
Based on this rule, the [joint] checks were not properly payable from the [Balsbaughs’] account!] absent inquiry by [United Bank] into [New LandJ’s authority to receive the proceeds. See Master Chem. Corp. v. Inkrott, 55 Ohio St.3d 23, 24, 563 N.E.2d 26 (1990); id. at 29-30 (Holmes, J., concurring). Compare First Nat’l. Bank of Boston v. Hovey, 10 Mass.App.Ct. 715, 721 (1980) (check paid over unauthorized signature not properly payable).
Govoni, supra, 51 Mass.App.Ct. at 40-42.
The payment by United Bank of the joint checks violated “reasonable commercial standards.” See, e.g., id. at 44-45. The results of the failure of banks to forgo, for the sake of efficiency, prudent safeguards in examining all presented checks for information as to the identity of the named payee is “a cost of doing business.” Id. at 46.
Ordinarily, a drawer, like Richard here, may insist that the drawee, United Bank, re-credit his account with the amount of any unauthorized payment. Stone & Webster Engr. Corp. v. First Natl. Bank & Trust Co., 345 Mass. 1, 9-11 (1962). “There is widespread authority that ‘payment of checks with missing endorsements’ involves ‘clearly unreasonable conduct on the part of the bank.’ ” White & Summers, Uniform Commercial Code, sec. 15-3, at 761.
United Bank responds that for the Balsbaughs to recover from it they also must prove that they have suffered damages as a result of United Bank’s conduct. In part, the Balsbaughs concede that they suffered no losses as a result of action by the subcontractors or vendors who were co-drawees on the joint checks. In their memorandum of law in support of their cross motion for partial summary judgment, which they resurrect here, they said:
Defendants are correct in asserting that Plaintiffs have not been sued by New Land’s subcontractors and/or suppliers. New Land’s subcontractors and suppliers contracted directly with New Land and lacked privity of contract to bring suit against Plaintiffs for breach of contract. New Land’s subcontractors[’] and suppliers!’] only recourse would have been to file a mechanic’s lien. No mechanic’s liens were filed.
United Bank relies on G.L.c. 106, Sec. 4-103(e), which provides that:
The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care. If there is also bad faith it includes any other damages, the party suffered as a proximate consequence.
The Court noted before that this section of the U.C.C. could have been written with greater clarity. In discerning its meaning, the Court observes that it appears at the very beginning of Article 4, coming even before the two lengthy definitions sections. Thus, it should be read as applying generally to the entire Article and not be limited solely to negligence-based claims as the Balsbaughs argue.
While no Massachusetts cases are cited by the parties, or have been found by this Court, decisions from other jurisdiction have held that a bank’s customer may not recover from his bank’s improper payment of a draft unless the customer proves that the bank’s action caused him a loss. See, e.g., Sanwa *51 Business Credit Corporation v. Continental Illinois National Bank & Trust Company of Chicago, 617 N.E.2d 253, 258 (Ill.App. 1993); Ed Stinn Chevrolet, Inc. v. National City Bank, 503 N.E.2d 524, 535-36 (Ohio 1986); Isacc v. American Heritage Bank and Trust Co., 675 P.2d 742, 744, 747 (Colo. 1984); Cooper v. Stockyards Bank of Oklahoma City, 644 P.2d 123, 125 (Okla.Civ.App. 1981). These decisions are consistent with the mandate that the U.C.C. “shall be liberally construed and applied to promote its underlying purposes and policies.” G.L.c. 106, Sec. 1-102(1). To compel a re-crediting of an account when no loss has been sustained by a depositor is hardly a modernization of the law governing commercial transactions, G.L.c. 106, Sec. l-102(2)(a), and runs counter to the general law of damages that compensates parties for losses actually sustained.
In response to this motion in limine, the Balsbaughs have re-stated in a general way what they will claim as damages. The Court observes that their claimed damages have not changed since their argument on summary judgment. They claim:
Plaintiffs’ damages include improper installation of rear yard causing extensive flooding, improper installation of electrical work, improper installation of water fountain, improper installation of motorized front gate, improper installation of and defective fencing, installation of damaged or defective trees and plants, and cracked foundation of the adjoining carriage house. Friel [an expert] provided an estimate to complete, correct and repair the work performed by New Land’s subcontractors and suppliers. Plaintiffs have incurred damages as a result of the improper negotiation of the joint checks including: $5,600.00 in consulting fees to Friel; $15,000.00 estimate to repair motorized front gate; $66,000.00 in landscaping work to correct and repair plantings; $2,500.00 to repair crack in foundation to carriage house; $4,000.00 in repairs to interior of carriage house; $5,300.00 to correct and repair fencing; and $5,800 to correct and repair outdoor lighting.
These statements — now twice made, and not expanded upon — provide the parameters of the Balsbaughs’ evidence on damages. They are admissions binding on the Balsbaughs just as if they were factual allegations in pleadings, see G.L.c. 231, Sec. 87, or statements of counsel in an opening statement. See e.g., Beaumont v. Segal 362 Mass. 30 (1972). Nothing was omitted by inadvertence.
None of the items listed by the Balsbaughs constitute damages caused by United Bank’s handling of the joint checks. What they seek are damages attributable to defective services or supplies that were provided by New Land, its subcontractors or its suppliers. These are damages caused by others for whom United Bank is not in any way responsible. They are, at best, “consequential damages.” But G.L.c. 106, Sec. 4-103(e) precludes consequential damages in the absence of a showing of bad faith on the part of United Bank. No such showing appears in the record.
Thus, as a matter of undisputed fact, the Balsbaughs have suffered no damages as a proximate consequence of United Bank’s actions in honoring the joint checks without full endorsements. No amount, therefore, should be re-credited to Richard’s account in the absence of some other evidence of related damages having been sustained; and Richard’s counsel told the Court that no evidence of other damages will be presented at trial.
“The time of the court should not be wasted in hearing a lost cause and the public should not be put to unnecessary expense arising from the trial of a case already shown to be lacking in merit.” Douglas v. Whittaker, 324 Mass. 398, 399 (1949). “For the same reason, the Court should in clear cases feel free to raise the point itself’ and it has done so. Smith & Zobel, Rules Practice, 8 M.P.S. Sec. 41.9.
Given the resolution of Paper #30, this Court has no need to address Paper #31.

ORDER

For the foregoing reasons the motion in limine regarding damages, Paper #30, is ALLOWED.
There being no damages, as a matter of law there can be no recovery against United Bank and, therefore, no trial is warranted.
Final judgment shall enter dismissing the complaint as against United Missouri Bank.